**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Beth Taylor, | No. CV-23-01857-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Sharon Beth Taylor's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 13), and Plaintiff's Reply (Doc. 14). The Court has reviewed the briefs and Administrative Record (Doc. 8, "R.") and now affirms the decision of the Administrative Law Judge ("ALJ") (R. at 13–23).

## I.     BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits on November 27, 2019, for a period of disability beginning October 25, 2019. (R. at 13.) Plaintiff's claim was initially denied on April 2, 2020, and upon reconsideration on October 13, 2020. (R. at 13.) Plaintiff then testified at a hearing held before an ALJ on May 20, 2022. (R. at 29–57.) On June 28, 2022, the ALJ denied Plaintiff's Application

1    (R. at 13–23), and on July 12, 2023, the Appeals Council denied Plaintiff's request for

2    review of the ALJ's decision (R. at 1–3). On September 5, 2023, Plaintiff filed this action

3    seeking judicial review.

4        The Court has reviewed the medical evidence and finds it unnecessary to provide a

5    complete summary here. The pertinent medical evidence will be discussed in addressing

6    the issues raised by the parties. In short, upon considering the medical records and opinions,

7    the ALJ found that Plaintiff had the following severe medically determinable impairments:

8    degenerative disc disease, status post right knee surgery with osteoarthritis of the right

9    knee, osteoarthritis of the shoulders, mild right peroneal neuropathy of the right lower

10   extremity, chronic pain syndrome, hypertension, fibromyalgia, and obesity. (R. at 16.) The

11   ALJ also found the following non-severe medically determinable impairments:

12   neuropathy, irritable bowel syndrome, depressive disorder, and anxiety disorder. (R. at 16.)

13       Ultimately, the ALJ determined that Plaintiff "does not have an impairment or

14   combination of impairments that meets or medically equals the severity of one of the listed

15   impairments in 20 CFR Part 404." (R. at 18.) The ALJ found that Plaintiff has the residual

16   functional capacity ("RFC") to perform "sedentary work" with no exposure to hazards.

17   (R. at 18.) Based on the vocational expert's answers to hypothetical questions, the ALJ

18   concluded that Plaintiff could perform past relevant work as a medical receptionist and is

19   not disabled under the Act. (R. at 22–23.)

20   **II.    LEGAL STANDARD**

21       In determining whether to reverse an ALJ's decision, the district court reviews only

22   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

23   517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability

24   determination only if the determination is not supported by substantial evidence or is based

25   on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

26   more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

27   person might accept as adequate to support a conclusion considering the record as a whole.

28   *Id.* To determine whether substantial evidence supports a decision, the court must consider

the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) The ALJ erred by rejecting Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence in the record, and (2) the ALJ erred by rejecting the

assessments of Plaintiff's treating physician without sufficient reasons supported by the record.

### A. Plaintiff's Symptom Testimony

Plaintiff first argues that the ALJ improperly rejected her symptom testimony. (Pl. Br. at 10.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Plaintiff testified at the hearing that she could sit for only thirty minutes, stand for ten minutes, and walk for twenty-five steps, and she could not concentrate or focus due to her pain. (R. at 42–48.) The ALJ found that, although Plaintiff's impairments could reasonably cause her alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 19.) Those reasons are as follows.

First, the ALJ stated that while Plaintiff reported disabling symptoms and limitations, she mentioned that she traveled to Maine to visit family, and she attends church once a week. (R. at 19–20.) The ALJ also cited record evidence that Plaintiff routinely

- 4 -

takes care of her personal hygiene, cares for her cat, prepares simple meals, does laundry, shops for groceries, drives, and attends her medical appointments. (R. at 21.) The ALJ added that Plaintiff reported she enjoys reading and crocheting. (R. at 21.) And although Plaintiff testified that she had trouble concentrating and finding words while she was in pain, the ALJ noted that this was not observed by her treating physicians. (R. at 21.)

The Court, therefore, disagrees with Plaintiff's contention that the ALJ failed to connect the medical records to specific inconsistencies in Plaintiff's testimony. (Pl. Br. at 11.) The ALJ noted, for example, that while Plaintiff stated she could only sit for thirty minutes at a time, she reported that she traveled to Maine in 2021, which the ALJ reasonably "presum[ed] would require the ability [to sit] for more than 30 minutes at a time." (R. at 21.) The ALJ also specifically stated that Plaintiff's testimony about loss of concentration was not observed by her treating physicians. (R. at 21.) Moreover, the ALJ considered Plaintiff's treatment history, which she found did not align with Plaintiff's complaints of debilitating pain and limitations. (R. at 19–21.) And the ALJ pointed to Plaintiff's activities of daily living, which she found to be not as limited as would be expected given Plaintiff's reports of disabling symptoms. (R. at 21.) Thus, although Plaintiff identifies some medical evidence that is consistent with Plaintiff's testimony, the inconsistencies identified by the ALJ are sufficient to discount Plaintiff's testimony. *See Smartt v. Kijakazi*, 53 F. 4th 489, 498 n.1 (9th Cir. 2022) (noting that an ALJ may "rely[] on any contradictions between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony" (emphasis omitted)).

**B.    The Medical Opinion of Plaintiff's Treating Physician**

Plaintiff also argues that the ALJ erred by rejecting the medical opinion of her treating physician, Dr. Andrew Burrell, without providing sufficient explanation. (Pl. Br. at 17.)

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In 2017, the Social

Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F.4th at 790. Nonetheless, in rejecting a treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)).

Dr. Burrell submitted three opinions on Plaintiff's behalf, indicating in each of them that Plaintiff could sit only two hours in an eight hour workday and could "stand/walk" less than two hours in a workday. (R. at 317, 471, 478.) He also opined that Plaintiff suffered from headaches or mental fatigue that would require her to rest twenty minutes to an hour. (R. at 318, 472, 479.)

First, the ALJ found Dr. Burrell's opinion on Plaintiff's ability to sit contradictory to other medical reports that she had a normal range of motion, strength, and sensation, and no tenderness, kyphosis, or scoliosis. (R. at 22.) And while the ALJ acknowledged

Dr. Burrell's opinion on Plaintiff's headaches and mental fatigue, she noted that the medical records show no treatments for headaches or indicate any decreased attention or concentration due to mental fatigue. (R. at 22.) Finally, the ALJ added that Dr. Burrell's opinions appear to correspond directly with Plaintiff's self-reported limitations and thus do not seem to be an independent opinion.

Plaintiff argues that it is improper for an ALJ to fault a doctor for relying on a claimant's reported symptoms. (Pl. Br. at 19.) But while Plaintiff is correct that an ALJ may not fault a treating physician simply for relying in part on a patient's self-reports, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Here, the record reflects that Plaintiff visited Dr. Burrell, requested he fill out social security forms for her, and reported to him that her pain and fatigue keep her from working eight hours a day; she can walk fifteen minutes at a time; she has to walk, sit, and stand in twenty minute intervals; she has difficulty doing two step jobs; she has mental fatigue and headaches that require rest every hour; her disabilities affect her at least half the day; and she needs at least four breaks during the day. (R. at 323.) Dr. Burrell then completed checkbox assessment forms opining consistently with each of those reported complaints. (R. at 317–18, 471–72, 478–79.) Therefore, the ALJ's conclusion that Dr. Burrell's "opinions appear to correspond directly with the claimant's own report of limitations" and are not "independent" opinions is supported by the record.

Plaintiff also argues that it was improper for the ALJ to reject the portion of Dr. Burrell's opinion about her headaches and mental fatigue, contending that this conclusion "highlights the ALJ's misunderstanding of not only chronic pain, but fibromyalgia symptomology and related fatigue." (Pl. Br. at 20.) But the ALJ's overall decision accounts for Plaintiff's fibromyalgia. The ALJ's rejection of this specific opinion was based on the reasoning that a claimant who experiences disabling headaches or mental

fatigue would be expected to seek treatment for such impairments, or that her treating providers would note decreased attention or concentration. (R. at 22.) This line of thinking is permissible. *See Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment . . . for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th 2007))). The ALJ, therefore, provided sufficient reasons for discounting Dr. Burrell's medical opinion that were supported by substantial evidence.

**IT IS THEREFORE ORDERED** affirming the June 28, 2022, decision of the Administrative Law Judge (R. at 13–23).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 19th day of August, 2024.

_____
Honorable John J. Tuchi
United States District Judge